IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

GREGORY LAMAR WALKER,

        Petitioner,

v.                                          CASE NO. 1:07-cv-172-MP-AK

WALTER MCNEIL,

        Respondent.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 14, Second Amended Petition for Writ of Habeas Corpus, by Gregory Lamar Walker. Respondent has filed a response, Doc. 21, and Petitioner has filed his reply. Doc. 24. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the petition be denied.

## BACKGROUND

Petitioner was convicted of armed burglary and aggravated battery. He was sentenced to life imprisonment on the burglary conviction and 15 years on the battery conviction, to run concurrently. He appealed, raising three issues: (1) that the court erred in failing to properly instruct the jury on the offense of burglary; (2) that the court erred in refusing an affirmative defense instruction; and (3) that the court erred in denying his 3.800(b) motion to correct sentence.[1] Doc. 21, Ex. E. The court of appeal per curiam affimed without written opinion.

---

[1]Petitioner's counsel had previously filed a Rule 3.800(b) motion to correct the court's designation of Petitioner as an habitual violent offender, which the trial court denied.

*Walker v. State*, 865 So.2d 487 (Fla. Dist. Ct. App. 2004).

Petitioner then filed a motion for post-conviction relief in which he raised the following claims: (1) that counsel was ineffective in failing to "call material witnesses that could have changed the outcome of the case"; (2) that counsel was ineffective in failing "to properly preserve issues for appellate review"; (3) that counsel was ineffective in failing properly to investigate "witnesses that the Defendant told defense counsel about"; (4) that the prosecutor engaged in misconduct when she "withheld exculpatory evidence as well as deals made with witnesses in order to obtain an illegal conviction"; (5) that he had newly discovered evidence of his innocence; and (6) that counsel was ineffective for failing to move for a continuance when the laboratory analyst "could not be at trial to testify to the results of the D.N.A. test results." Doc. 21, Ex. H.

The court summarily denied some of the claims but granted a hearing on the remaining claims and appointed counsel to represent Petitioner. More specifically, the court allowed the following issues to go forward: (1) whether the prosecution improperly withheld evidence that "the victim stated, before trial, that [Petitioner] was not the perpetrator," (2) whether counsel was ineffective for failing to "call, at trial, two material witnesses: a detective who would have testified that Defendant was not involved in the crime, and a mental health examiner who would have testified that Defendant was not competent to stand trial," and (3) whether newly discovered evidence "exist[s] such that the victim's brother told Defendant while both were incarcerated that the victim said 'they sent the wrong guy to prison for a crime he did not do.'" *Id.* After the evidentiary hearing, the court denied the remaining claims for relief, finding:

1.    The prosecutor did not engage in misconduct in that the victim...never stated before trial, or after trial, the Defendant was not the perpetrator.

    a.    [The victim] testified at the hearing that both before the trial and during her trial testimony that she could not positively identify the Defendant because she did not get a good look at the Defendant.

    b.    The Defendant was identified as the perpetrator at the trial from forensics recovered at the crime scene, including the Defendant's palm print from the victim's blood on the wall, and witnesses that identified the Defendant as running from the crime scene.

2.    Michael Ruppert was not ineffective for failure to call Detective Halvosa and a mental health expert, Dr. Abel.

    a.    Michael Ruppert took Detective Halvosa's deposition and established that Detective Halvosa was a supervisor and had no direct knowledge of the case other than reviewing other officer's reports.

    b.    Michael Ruppert did speak with Dr. Abel prior to the trial and at no point did Dr. Abel suggest the Defendant was incompetent to stand trial.

3.    [The victim's brother] testified at [the] hearing that his sister, [the victim], told him that she could not positively identify the Defendant because she did not get a good look at the Defendant. This testimony is consistent with the testimony [the victim] gave prior to and at trial.

*Id.*

Petitioner appealed the ruling, which was affirmed by the court of appeal. *Walker v. State*, 946 So.2d 18 (Fla. Dist. Ct. App. 2006). Petitioner then filed a Rule 3.800(a) motion to correct illegal sentence, arguing that the court improperly sentenced him as an habitual violent offender. Doc. 21, Ex. P. The court denied the motion, finding that Petitioner met the requirements for habitual offender status both as to the number and timing of the predicate offenses. *Id.*

The instant petition followed. In this proceeding, Petitioner raises the following claims: (1) that his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments were violated when the court found counsel was not ineffective for failing to call material witnesses; (2) that his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments were violated when the court found counsel was not ineffective for failing to preserve for appeal issues related to the destruction of evidence by law enforcement; (3) that his due process rights under the Fourteenth Amendment were violated when he was convicted based on insufficient evidence, the withholding of exculpatory evidence, and the use of false testimony and testimony from a non-certified expert; (4) that his due process rights under the Fourteenth Amendment were violated when he was convicted on insufficient evidence and the court rejected his newly discovered evidence argument. Each will be considered in turn.

## **DISCUSSION**

Under 28 U.S.C. § 2254, a federal court may grant habeas corpus relief only if the state court adjudication

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d), "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "A state-court decision will certainly be contrary to...clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." *Williams*, 529 U.S. at 405. A state-court decision will also be contrary to clearly established Supreme Court precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Id*. at 406.

Under the "unreasonable application" clause of § 2254(d), "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. The federal court considering a habeas petition "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 412.

Settled circuit court precedent interpreting Supreme Court decisions is not determinative of clearly established federal law. Instead, this Court must look to the specific holdings of Supreme Court cases themselves. If the Supreme Court has not issued a specific holding on the issue at hand, then the state court's decision is not contrary to or an unreasonable application of clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 127 S.Ct. 649, 654, 166 L.Ed. 2d 482 (2006).

Further, in reviewing the decision of the state court, this Court must presume that the state court's factual determinations are correct, and the petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Parker v. Head*, 244 F.3d 831, 835-36 (11th Cir. 2001).

The fact that the appellate court does not write "an opinion that explains the state court's rationale," does not detract from the deference owed to that court's decision. *Wright v. Secretary for the Department of Corrections*, 278 F.3d 1245,1255 (11th Cir. 2002). Under § 2254, the Court is to focus on the result of the state proceeding, not the reasoning underlying it, since all that is required for a state-court adjudication on the merits is a rejection of a claim on the merits, not an explanation. *Id*. at 1254-55.

Furthermore, a habeas petition grounded on issues of state law provides no basis for habeas relief, as a violation of a state statute or rule of procedure is not, in itself, a violation of the federal constitution. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 (1982); *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1989). This limitation on federal habeas review applies equally when a petition which truly involves only state law issues is couched in terms of alleged constitutional violations. *Branan*, 861 F.2d at 1508; *see also Johnson v. Rosemeyer*, 117 F.3d 104, 110 (3rd Cir. 1997) (errors of state law cannot be repackaged as federal errors simply by citing the United States Constitution).

Finally, "[f]ederal habeas relief is available to state prisoners only after they have exhausted their claims in state court." *O'Sullivan v. Boerckel*, 526 U.S. 838, 839 (1999) (citing 28 U.S.C. §§ 2254(b)(1) & (c)). To fully exhaust state remedies, "state prisoners must give the

state courts one full opportunity to resolve any constitutional issues by invoking one complete

round of the State's established appellate review process." *Id*. at 845. In addition, "the federal

claim must be fairly presented to the state courts," and it must be "the same claim." *Picard v.

Connor*, 404 U.S. 270, 275-76 (1971); *see also Duncan v. Henry*, 513 U.S. 364, 365 (1995)

(citing *Picard*). In other words, to exhaust state court remedies fully, the petitioner must "'make

the state court aware that the claims asserted present federal constitutional issues.'" *Jimenez v.

Florida Department of Corrections*, 481 F.3d 1337, 1342 (11th Cir. 2007) (citation omitted). To

raise a federal issue, the petitioner

> can easily indicate the federal law basis for his claim in a state court petition or
> brief, for example, by citing in conjunction with the claim the federal source of
> law on which he relies or a case deciding such a claim on federal grounds, or by
> simply labeling the claim "federal."

*Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

Claims which have not been fairly presented to the state court but are defaulted from

state court review are considered technically exhausted because no remedies are available for

purposes of § 2254(c). *Coleman v. Thompson*, 501 U.S. 722, 732 (1991). *See also White v.

State*, 664 So.2d 242, 244 (Fla. 1995) (claims that could have or should have been raised on

post-conviction and were not so raised are procedurally defaulted). However,

> In all cases in which a state prisoner has defaulted his federal claims in state court
> pursuant to an independent and adequate state procedural rule, federal habeas
> review of the claims is barred unless the prisoner can demonstrate cause for the
> default and actual prejudice as a result of the alleged violation of federal law, or
> demonstrate that failure to consider the claims will result in a fundamental
> miscarriage of justice.

*Coleman*, 501 U.S. at 750.

Because some of Petitioner's claims raise the issue of counsel's effectiveness, a review of *Strickland v. Washington*, 466 U.S. 668 (1984), is also appropriate.

To prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate (1) that his counsel's performance was below an objective and reasonable professional norm, and (2) that he was prejudiced by this inadequacy. *Strickland*, 466 U.S. at 686. The court may dispose of the claim if a defendant fails to carry his burden of proof on either the performance or the prejudice prong. *Id*. at 697. The court need not address the adequacy of counsel's performance when a defendant fails to make a sufficient showing of prejudice. *Id.; see also Tafero v. Wainright*, 796 F.2d 1314, 1319 (11th Cir. 1986).

With regard to the performance prong of *Strickland*, a defendant must provide factual support for his contentions that counsel's performance was constitutionally deficient. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987). The court must consider counsel's performance in light of all of the circumstances at that time and indulge in a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance. *Strickland*, 466 U.S. at 689-90. To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take." *Grayson v. Thompson*, 257 F.3d 1194, 1216 (11th Cir. 2001) (emphasis omitted). This standard is objective, and "it matters not whether the challenged actions of counsel were the product of a deliberate strategy or mere oversight." *Gordon v. United States*, 496 F.3d 1270, 1281 (11th Cir. 2007). "The relevant question is not what actually motivated counsel, but what

reasonable could have motivated counsel." *Id*. When the court "can conceive of a reasonable motivation for counsel's actions," it can deny the claim of ineffectiveness without evidentiary hearing. *Id*. "An ambiguous or silent record is not sufficient to disprove the strong and continuing presumption...that [counsel] did what he should have done and that he exercised reasonable professional judgment." *Chandler v. United States*, 218 F.3d 1305, 1314 n.15 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001). "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000). There are no "absolute rules" for determining whether counsel's actions were indeed reasonable, as "[a]bsolute rules would interfere with counsel's independence–which is also constitutionally protected–and would restrict the wide latitude counsel have in making tactical decisions." *Putnam v. Head*, 268 F.3d 1223, 1244 (11th Cir. 2001). "To uphold a lawyer's strategy, [the Court] need not attempt to divine the layer's mental processes underlying the strategy." *Chandler*, 218 F.3d at 1315 n.16. "No lawyer can be expected to have considered all of the ways [to provide effective assistance]." *Id*. Quite importantly,

> If a defense lawyer pursued course A, it is immaterial that some other reasonable courses of defense (that the lawyer did not think of at all) existed and that the lawyer's pursuit of course A was not a deliberate choice between course A, course B, and so on. The lawyer's strategy was course A. And [the Court's] inquiry is limited to whether this strategy, that is, course A, might have been a reasonable one.

*Id*.

To show prejudice, a defendant must show more than simply that counsel's

unreasonable conduct might have had "some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Instead, a defendant must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A "reasonable probability is defined as a probability sufficient to undermine confidence in the outcome." *Id*. Additionally, prejudice is established only with a showing that the result of the proceeding was fundamentally unfair or unreliable. *Lockhart v. Hill*, 506 U.S. 364, 370 (1993).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail...are few and far between." *Chandler*, 218 F.3d at 1313 (11th Cir. 2000). This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether a reasonable lawyer could have acted in the circumstances as defense counsel acted. *Williamson v. Moore*, 221 F.3d 1177, 1180 (11th Cir. 2000), *cert. denied*, 534 U.S. 903 (2001).

1.       Failure to call witnesses.

As noted previously, the state court found that counsel did not act deficiently in failing to call either Detective Halvosa or Dr. Abel as witnesses in Petitioner's trial. Having carefully considered the matter, the Court is of the opinion that this conclusion is neither contrary to nor an unreasonable application of *Strickland* and was not based on an unreasonable determination of the facts presented to the state court.

As to Detective Halvosa, counsel testified at the state court hearing that he took the detective's deposition before trial and determined that Halvosa had no firsthand

knowledge of the investigation of the incident at issue because he was only the supervising officer, not the officer who actually investigated the crimes. Doc. 21, Ex. I In counsel's opinion, Detective Halvosa "would not help," as "he was in no position to render an opinion as to whether or not Mr. Walker was there or not there." *Id*. At best, Halvosa's testimony would have been to the effect that, while the investigating officer was leaving the room, he told Halvosa there was "no indication" that Petitioner assaulted the victim or broke into her house. Furthermore, as a matter of strategy, "by calling him, we would lose first and last." *Id.*

There was no dispute in the evidence that the victim could not identify Petitioner as her assailant, that Petitioner's fingerprints were not found on the lead glass pitcher used to strike the victim, or that there was no eyewitness who saw Petitioner actually entering the residence ; thus, for the investigating officer to have told his supervisor, Detective Halvosa, that there was "no indication" that Petitioner was the perpetrator was not out of line with the direct physical evidence on those two particular issues. Even discounting the eyewitness' identification of Petitioner as the person they saw leaving the victim's home, there was physical evidence that placed Petitioner inside the home at the time of the assault, namely, Petitioner's palm print in the victim's blood.

At the time of Petitioner's trial, Rule 3.250 of the Florida Rules of Criminal Procedure entitled a defendant to make the opening and concluding arguments in closing if he offered no witnesses or documentary evidence or if he offered no one other than

himself as a witness.[2] *Lamar v. State*, 583 So.2d 771, 772 (Fla. Dist. Ct. App. 1991);

*Gari v. State*, 364 So.2d 766, 767 (Fla. Dist. Ct. App. 1978). With that in mind, it was

reasonable for counsel to determine that Halvosa's testimony was not sufficiently helpful

to risk losing the opportunity to be the last person to address the jury before it began

deliberating on Petitioner's guilt. An attorney is never required to call every witness that

the client wants to be called at trial, excepting, of course, the defendant himself, who has

the constitutional right to testify over his attorney's objections. As to Detective Halvosa,

however, it was counsel's decision whether he should be called, not Petitioner's, and as

long as that decision was reasonable, it cannot be second-guessed. However, even if

counsel erred in failing to call Halvosa to elicit the investigating officer's statement from

him, Petitioner cannot establish that he was prejudiced by the decision. As noted, there

was physical evidence placing him in the home at the time of the assault on the victim

which was more than sufficient to convict him both for the burglary and the aggravated

assault. Thus, there is not a reasonable probability that the outcome of the trial would

have been different if Halvosa had been called as a witness.

As to Dr. Abel, counsel testified that once Petitioner told him about the mental

evaluation of Petitioner which Dr. Abel performed within hours of the crimes at issue, he

talked with her and determined that her evaluation did not "have anything to do with

competency to proceed with trial or anything like that," but was instead an evaluation for

---

[2]In 2007, Rule 3.250 was amended to delete the portion related to closing argument, and a new rule, Fla. R. Crim. P. 3.381, giving the State the right to open and close the closing arguments, was adopted. *In re Amendments to Florida Rules of Criminal Procedure*, 957 So.2d 1164 (Fla. 2007).

disability purposes.  Doc. 21, Ex. I.  He also determined that the timing of the evaluation

was not helpful from an alibi stance in that the timing of his appointment with Dr. Abel

left "sufficient time for [Petitioner] to be at the evaluation, get home, leave and still

commit the crime."  *Id*.  Counsel also testified that he had no reason to suspect that

Petitioner was not competent to stand trial or to assist in his defense "because he was

very coherent and knew the case and could recite facts to me, page and lines of

depositions and police reports and we did spend a lot of time going over trial strategy."

*Id*.  Counsel further stated that as to the day in question, Petitioner "was certainly

oriented as to time, place and what he was doing and there was no indication of any

haziness or inability to recall events of that day and there was no question in my mind of

his ability to assist in his own defense."  *Id*.  Finally, he testified that he talked to

Petitioner about the issue of competency and "it was agreed...there was no need for

[future tests], that [Dr. Abel's evaluation] was merely for a determination about disability

benefits and we did not purse that avenue any further."  *Id*.

As the state court found, this was a reasonable course of action for counsel to

take, as he was not required to seek a competency evaluation that he did not believe was

warranted based on his interactions with Petitioner.  Petitioner's inability to handle

money or to be employed did not mean that he lacked "'sufficient present ability to

consult with counsel with a reasonable degree of rational understanding.'"  *Alston v.

State*, 894 So.2d 46, 54 (Fla. 2004).  Counsel testified that in his opinion Petitioner met

this standard, and the state court's crediting of that determination without any additional

persuasive evidence of Petitioner's alleged incompetence besides a disability evaluation

was not unreasonable.

This ground for relief should therefore be denied.

2.      Failure to preserve for appeal issue of State's destruction of evidence.

This claim is plainly without merit.  When counsel discovered that the photographs used by the police in the lineup were missing, he filed a motion to dismiss on the basis that the State had destroyed exculpatory evidence.  Doc. 21, Ex. B. According to the motion, counsel "had made numerous requests for a copy of the photo lineup" prior to the investigating officer's deposition but was never provided with the lineup.  *Id*.  During the deposition, the officer "confessed that he destroyed the photo lineup and maintained that no one identified [Petitioner]."  *Id*.  In fact, the "three eyewitnesses identified people other than [Petitioner] as the black male they say they saw running from [the victim's] home immediately after she was attacked and screamed."  *Id*. The court conducted an evidentiary hearing on the issue but denied the motion.  Doc. 21, Ex. C.  Counsel later filed a second motion to dismiss on the same issue, but adding that the officer's report regarding the individual who was identified by the eyewitnesses conflicted with his testimony at the hearing that the individual was incarcerated at the time of the crimes at issue and could not have been the perpetrator.  Doc. 21, Ex. B.  This motion was apparently denied as well, but counsel continued to press the issue of misidentification with the eyewitnesses during trial.  Doc. 21, Ex. C.

An attorney has no control over how a court rules after he makes his best arguments.  Counsel made the appropriate motion, not once, but twice, and, undeterred, used the misidentifications as impeachment during trial.  He could not do any more, as he

did in fact preserve the issue for appeal. That he was unsuccessful in his challenges is not deficient performance. Whether the trial court itself erred in denying counsel's motions is a matter separate and apart from whether counsel was ineffective for failing to preserve the issue for appeal. He plainly preserved the issue for appeal, and thus, this claim for relief should be denied.

       3.       Violation of due process–evidentiary issues and prosecutorial misconduct.

       In this claim, Petitioner charges that his due process rights under the Fourteenth Amendment were violated when he was convicted based on insufficient evidence, the withholding of exculpatory evidence, and the use of false testimony and testimony from a non-certified expert. More specifically, Petitioner claims that the prosecutor withheld exculpatory evidence, failed to advise Petitioner of "deals made with witnesses," and used "false testimony of the forensic technician and a non-certified hand print expert...[who did] not know who[se] hand prints were found at the crime scene." Doc. 14. He further charges that the prosecutor knew that deals were made "with numerous witnesses for their testimony against Petitioner" and that "law enforcement [had] told [the] victim and witnesses that the Petitioner was the actual perpetrator." *Id*. He also maintains that the prosecutor withheld from the defense the fact that the victim was on probation for cultivating marijuana and that she could not identify Petitioner as the attacker. *Id*.

       Respondent argues initially that this claim is not exhausted because Petitioner did not fairly present it to the state court as a violation of federal constitutional law. To the extent that Petitioner argues that the State improperly withheld exculpatory and

impeachment evidence from him, Respondent's argument is not well taken, as these issues have long been governed by *Brady v. Maryland*, 373 U.S. 83 (1963). Indeed, a cursory review of Florida case law shows that *Brady* is the guiding principle for Florida state courts in this situation, and there does not appear to be a separate state court standard, and thus, Petitioner's failure to cite *Brady* is not dispositive.

This does not end the inquiry however. To the extent, however, that Petitioner charges that the prosecutor failed to tell him that the victim could not identify him as the perpetrator, that issue was addressed at the state court evidentiary hearing, and the state court's conclusion is entitled to deference under § 2254(d). The victim herself never indicated that she could identify Petitioner as her attacker, either during the investigation, the trial, or the post-conviction hearing, and Petitioner was fully aware of that fact from the beginning. Certainly, if the State had kept that information from Petitioner, there indisputably would have been a *Brady* violation, but that was not the situation here, and therefore, as to the alleged suppression of evidence related to the victim's identification of Petitioner, the claim is wholly without merit.

While Petitioner appealed this issue, he did not appeal any other issues related to the State's alleged suppression of evidence. See Doc. 21, Ex. H (notice to review "ruling of evidentiary hearing"); thus, because Petitioner did not complete appellate review on the remaining *Brady* claims, they are not exhausted and are precluded from consideration here unless Petitioner can overcome the procedural bar. He has not shown cause for his failure to appeal the remaining issues, and there is no showing of actual innocence so as to establish there would be a fundamental miscarriage of justice if the Court did not

consider those claims. As succinctly stated by Petitioner's trial counsel at the evidentiary

hearing:

> You've got the wall, you've got [the victim's] blood and you got Mr.
> Walker's palm print compressed into the blood into the wall. It was [the
> victim's] blood; it was Mr. Walker's palm print.
>
> * * *
>
> [I]t was pretty clear from the facts of the case that it could have only have
> happened within a short period of time because [the victim] was visiting a
> girlfriend I believe, came home the next day, the next day is when Mr.
> Walker said he was there, came home just before dark, like the other
> witnesses said, came in, next thing you know, there was a crash, the
> witnesses saw Mr. Walker run from the crime scene.
>
> * * *
>
> And the only time period...that that could have got there with Mr.
> Walker's print would have been that short interval of time when [the
> victim] came home after the trip. Because Mr. Walker said that he wasn't
> there any time before that day before and [the victim] was not even there,
> she was out of town, so it had to be within that one instant of time.

*Id.*

Thus, while the claim regarding the victim's identification was exhausted, it is

without merit. As to the other *Brady* issues raised in this claim, they were not exhausted,

and Petitioner cannot overcome the procedural default. For these reasons, Ground Three

should be denied.

> 4.     Violation of due process–insufficient evidence and improper rejection of
>        newly discovered evidence argument.

Even if the Court assumes this claim was properly exhausted in state court as a

due process claim, there was more than sufficient evidence to convict Petitioner as noted

in the previous section–his palm print was found in the victim's blood, and there was no

other way it could have gotten there before the day of the assault. As to his claim that the state court erred in dismissing his newly discovered evidence claim, it is equally without merit. The issue was explored at the evidentiary hearing, and the court found the testimony from the victim's brother consistent with the victim's testimony that she could not identify the person who attacked her. Petitioner has not carried his burden of rebutting the presumption of correctness afforded this conclusion by clear and convincing evidence, and indeed, there is nothing in the record to suggest that this conclusion is not correct. Obviously, the state court credited the brother's testimony that the victim never told him that the State had convicted the wrong man over Petitioner's to the contrary.

This claim should be denied.

## CONCLUSION

In light of the foregoing, it is respectfully **RECOMMENDED** that the second amended petition for writ of habeas corpus, Doc. 14, be **DENIED**, and this cause be **DISMISSED WITH PREJUDICE**.

**IN CHAMBERS**, at Gainesville, Florida, this __10th__ day of August, 2009.


 s/A. Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

A party may file specific, written objections to the proposed findings and

recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.